UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                                         **ORDER**
                                                                            05-CR-45S

JOHN WESLEY DEGOUNETTE and
ANDREW BUXTON,

                        Defendants.

       1.       On February 2, 2005, the Grand Jury for the Western District of New York returned a four count Indictment charging Defendants John Wesley DeGounette and Andrew Buxton with various narcotics and gun related offenses. This Court thereafter referred this matter to the Honorable H. Kenneth Schroeder, United States Magistrate Judge, for all pretrial matters pursuant to 28 U.S.C. § 636(b)(1).

       2.       On April 8, 2005, Defendant Buxton filed a motion seeking, among other things, to suppress statements he made following his arrest at the United States - Canadian border on December 19, 2004. By motion filed on April 20, 2005, Defendant DeGounette joined in Buxton's motion, including his suppression request. Judge Schroeder conducted an evidentiary hearing on the suppression issue on April 21, 2005.

       3.       By Report, Recommendation and Order entered on January 31, 2006, Judge Schroeder recommended that Defendants' request to suppress their statements be denied.[1]

       4.       After numerous extensions, Defendant Buxton filed timely Objections to Judge Schroeder's Report, Recommendation and Order in accordance with 28 U.S.C. § 636(b)(1)(C) and Local Rule 72.3(a)(3), in which Defendant DeGounette later joined.

---

[1] Familiarity with Judge Schroeder's Report, Recommendation and Order is presumed.

After full briefing on the Objections, this Court heard oral argument on July 31, 2006, and set a supplemental briefing and argument schedule. After numerous extensions to facilitate plea negotiations, the parties requested that the previously scheduled oral argument appearance be converted to the taking of a plea. However, at the scheduled appearance on December 4, 2006, the plea did not go forward as planned, and this Court set a new supplemental briefing schedule. This Court heard supplemental oral argument on Defendants' Objections on January 25, 2007, and reserved decision at that time.

5. This Court has thoroughly reviewed *de novo* Judge Schroeder's Report, Recommendation and Order, Defendants' Objections, the arguments of counsel, and the applicable law. Upon due consideration, this Court finds no legal or factual error in Judge Schroeder's Report, Recommendation and Order, except with respect to its failure: (1) to acknowledge that Defendant Buxton refused to talk to Detective Judge after the officer advised him of his *Miranda* rights; (2) to determine whether Buxton's refusal constituted an invocation of his right to remain silent; (3) if so, to determine whether Buxton thereafter waived that right; and (4) to acknowledge that Defendants' statements while being escorted to the car were in response to Detective Judge's questions and were not "spontaneous."

6. It is well-established that if the government wishes to introduce a statement made by a defendant during a custodial interrogation, it bears the burden of establishing by a preponderance of the evidence that the suspect waived his *Miranda* rights -- including his right to counsel and his right to remain silent -- and that his statement was "truly the product of free choice." United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991). In Davis v. United States, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), the Supreme Court held that a custodial interrogation must cease when a suspect unambiguously invokes his right to counsel. The question of whether a suspect has

invoked his Sixth Amendment right is an objective one: that is, whether the suspect "articulated his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 459, 114 S. Ct. at 2350.

Several Circuit courts have applied this objective test to determine if a suspect has effectively invoked his right to remain silent. See, e.g., United States v. Banks, 78 F.3d 1190, 1197-98 (7th Cir. 1996) (applying *Davis* test to determine if the suspect's invocation of his right to remain silent was ambiguous or equivocal), *vacated on other grounds,* 519 U.S. 990, 117 S. Ct. 478, 136 L. Ed. 2d 373 (1996); Medina v. Singletary, 59 F.3d 1095, 1100 (11th Cir. 1995) (same); see also Burket v. Angelone, 208 F.3d 172, 200 (4th Cir. 2000) (holding that in light of *Davis,* the trial court's admission of statement following his ambiguous statement invoking the right to remain silent was not contrary to clearly established federal law); Barnes v. Johnson, 160 F.3d 218, 224-25 (5th Cir. 1998) (same), *cert. denied,* 526 U.S. 1118, 119 S. Ct. 1768, 143 L. Ed. 2d 798 (1999); United States v. Ramirez, 79 F.3d 298, 305 (2d Cir. 1996) (assuming, but not explicitly holding, that *Davis* applies to invocations to right to remain silent); United States v. Johnson, 56 F.3d 947, 955 (8th Cir. 1995) (citing *Davis* in its analysis of whether the suspect invoked his right to remain silent).

If a suspect states unequivocally before or during an interrogation that he wishes to remain silent, the officer must cease the interrogation. See, e.g., Campaneria v. Reid, 891 F.2d 1014, 1021 (2d Cir. 1989), *cert. denied,* 499 U.S. 949, 111 S. Ct. 1419, 113 L. Ed. 2d 471 (1991). Generally, in determining whether a suspect has invoked his right to remain silent, a court must liberally construe his words or actions, taking into account the totality of the circumstances under which they were spoken or made. Bradley v. Meachum,

918 F.2d 338, 342 (2d Cir. 1990); see also Ramirez, 79 F.3d at 304 (2d Cir. 1996) (citing Quinn v. United States, 349 U.S. 155, 162-63, 75 S. Ct. 668, 673, 99 L. Ed. 964 (1955), for the proposition that "[a] suspect need not rely on talismanic phrases or any special combination of words to [effectively] invoke his Fifth Amendment right to remain silent").

Once a suspect has unequivocally invoked his "right to cut off questioning," an interrogator must "scrupulously honor" this request by immediately ceasing questioning. Michigan v. Mosley, 423 U.S. 96, 104, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313 (1975). The Second Circuit has held that if it is unclear whether a suspect wants to end an interrogation, the officers may ask narrow questions for the sole purpose of clarifying the ambiguity. Campaneria, 891 F.2d at 1021 (internal quotation marks omitted). An officer may not, however "persist[ ] in repeated efforts to wear down [the suspect's] resistance and make him change his mind." Mosley, 423 U.S. at 105-06, 96 S. Ct. at 327.

Provided that an officer immediately ceases an interrogation at a suspect's request, questioning can resume under certain circumstances without running afoul of *Miranda*. See Mosley, 423 U.S. at 101-05, 96 S. Ct. at 325-27 (holding that it was proper to resume questioning of a suspect who had invoked his right to remain silent, where the initial interrogation was immediately ceased upon his request, the suspect was readvised of his *Miranda* rights, and was questioned by another officer at another location about an unrelated crime after an interval of more than two hours).

In the instant case, the record reflects that on the evening of Defendants' arrest, Detective Judge and Special Agent Lamoureaux entered the holding cell where Defendant Buxton was being held. With Agent Lamoureaux present in the room, Detective Judge identified himself as a police officer and advised Buxton of his rights by reading them from

a "Miranda card." (T. at 56-57, 92, 96, 109, 110-11, 115-16).[2]  After advising Buxton of his rights, Detective Judge asked him if he understood "each of these rights," and Buxton replied "yes." (T. at 58, 116). However, according to Detective Judge's testimony, Buxton declined to answer his questions. At the suppression hearing, Detective Judge testified as follows:

> Q: After you finished advising [Mr. Buxton] of these rights, did you speak with [him] . . . specifically about the firearms that were found in the car?
> A. Not right at that time. He didn't want to talk to me at that time.

(T. at 58).

. . . . .

> Q. Did he make any statement or did you question him at all about the marijuana that was found in the vehicle?
> A. No, I did not.

(T. at 60).

. . . . .

> Q. He didn't say anything in response to receiving his rights?
> A. Yes, he did, he said he understood them.
> Q. You didn't ask him any questions?
> A. I said do you [Buxton] wish to say anything, and he said no.
> Q. So he actually invoked his right to remain silent?
> A. In the holding cell.
> Q. Did you re-Mirandize him at any point?
> A. No.

(T. at 84).

---

[2] "T." refers to the transcript of the suppression hearing held before Judge Schroeder on April 21, 2005. (Docket No. 21).

Immediately following Buxton's refusal, Agent Lamoureaux proceeded to question him about the weapons and the marijuana found in the car. (T. at 128-29). Buxton declined to answer Agent Lamoureaux's questions regarding the marijuana, but replied that the guns belonged to Defendant DeGounette. (T. at 128-29, 141). Thereafter, on the way out to the car, Detective Judge asked Buxton why he had the guns, (T. at 85) to which he responded that Canada was a "tough place" where "you can get an ice pick in the gut," and that he "needed [the guns] for protection." (T. at 129-30, 142). While Judge Schroeder accepted the witness' characterization of these comments as "spontaneous," the Government has conceded that Buxton made them in response to Detective Judge's questions. (Govt's Supp. Brief, pp. 6-7).

Based on the foregoing, this Court finds that Buxton invoked his right to remain silent by refusing to answer Detective Judge's questions in the holding cell, and that neither Judge nor Agent Lamoureaux honored that request. Rather, the record reflects that: (1) the officers did not terminate the interrogation; (2) they did not readvise Buxton of his Miranda rights nor did any substantial period of time pass before Lamoureaux proceeded to question him; and (3) Lamoureaux's questions were not meant to clarify whether Buxton wished to remain silent. Under the circumstances, this Court concludes that the Government has failed to show by a preponderance of the evidence that Buxton waived his right to remain silent. Accordingly, Buxton's statement to Lamoureaux that DeGounette owned the guns and his statements to Detective Judge about needing the weapons for protection and about getting "an ice pick in the gut" must be suppressed. All of Defendants' other statements, including DeGounette's, will not be suppressed.

7.    Consistent with the foregoing, Defendants' Objections are granted in part

and denied in part, and this Court will accept Judge Schroeder's Report, Recommendation and Order with the foregoing modifications.

IT HEREBY IS ORDERED, that this Court ADOPTS Judge Schroeder's January 31, 2006 Report and Recommendation (Docket No. 34), including the authorities cited and the reasons given therein, with the foregoing modifications.

FURTHER, that Defendants' Objections (Docket Nos. 44 & 50) are GRANTED in part and DENIED in part, consistent with the foregoing decision.

FURTHER, that Defendant Buxton's Motion to Suppress (Docket No. 16) in which Defendant DeGounette has joined (Docket No. 19) is GRANTED in part and DENIED in part, consistent with the foregoing decision.

SO ORDERED.

Dated:   February 21, 2007
         Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge